UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**KEVIN J. CUNNINGHAM,**                                 Chapter 13
                    Debtor                      Case No. 12-44329-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

The matter before the Court is the Motion filed by Beacon Investment, LLC ("Beacon") and United Express Wireless, Inc. ("United") (collectively the "Creditors") to Dismiss the Chapter 13 case of Kevin J. Cunningham (the "Debtor") filed on February 19, 2013. The Creditors argue that the Debtor is ineligible for Chapter 13 relief as his debts exceed the debt limitations provided for under 11 U.S.C. § 109(e). The Debtor filed a Memorandum in Opposition to the Creditors' Motion to Dismiss on March 14, 2013. The Court heard the Motion on March 28, 2013. The facts necessary to decide the Motion are not in material dispute and neither party requested an evidentiary hearing. The Court will decide the Motion on the submissions and arguments of counsel.

**II. FACTUAL BACKGROUND**

The Debtor filed a voluntary Chapter 13 petition on December 19, 2012 and filed Schedules of Assets and Liabilities on January 3, 2013. The Debtor's Schedule D-Creditors

1

Holding Secured Claims reveals that Bank of America holds first and second mortgages in the amounts of $378,562 and $185,983, respectively, on the Debtor's residence located at 27 Hale Road, Stow, Massachusetts, which the Debtor valued at $475,000. Bank of America's claims total $595,469, resulting in a partially secured second mortgage and an unsecured deficiency claim of $89,545. On Schedule F-Creditors Holding Unsecured Nonpriority Claims, the Debtor listed total unsecured claims of $661,125.08.

Of those claims, the Debtor listed the Creditors' unsecured claims, each in the sum of $82,205.75, as contingent, unliquidated and disputed. The Debtor also listed the claims of the following creditors as contingent, unliquidated and disputed: Ford Motor Credit Company LLC ($2,371); Productive Construction Services ($215,184.06); RBS Citizens ($170); RBS Citizens Bank ($-0-); Sunbelt Rental ($3,489.64); Tessco, Inc. ($35,339); and Verizon Credit ($-0-). Excluding those claims, as well as the claims of the Creditors, results in total noncontingent, liquidated and undisputed debt of $329,704.88.

The Debtor's Schedules contain the names and addresses of creditors as well as the dates the debts were incurred and a brief description of the nature of the claims. On February 19, 2013, the Creditors filed a Motion to Dismiss Chapter 13 Case pursuant to which they sought dismissal of the Debtor's Chapter 13 case on the ground that his unsecured debt exceeds the limit set forth in 11 U.S.C. § 109(e), i.e, $360,475.

In their Motion, the Creditors referenced litigation pending in the United States District Court for the District of Maine, <u>Beacon Invs. LLC v. Cunningham</u>, Civil No. 2:11-CV-00420-JAW (the "District Court action") against multiple defendants, including the

Debtor. The Creditors set forth the procedural history of the District Court action which initially was commenced in the United States Bankruptcy Court for the District of Maine where the Chapter 11 case of an entity called MainePCS, LLC was pending.

This Court takes judicial notice of the docket and pleadings filed in the District Court action where both parties reference selective pleadings filed in that action. S*ee* Fed. R. Evid. 201. In the District Court action, the Creditors settled with all other defendants except the Debtor against whom they asserted the following direct (i.e., non-derivative) claims arising under Delaware law:

(Count XI) – Breach of Duty of Loyalty;
(Count XII) – Breach of Fiduciary Duty;
(Count XIII) – Participation in Fraud, Deceit, and Breach of Contract;
(Count XVII) – Participation in Breach of Fiduciary Duty;
(Count XVIII) – Aiding and Abetting Breach of Fiduciary Duty.

The Creditors asserted that the Debtor failed to comply with discovery requests and orders, although they disclosed that his attorney was permitted to withdraw from representation due to non-payment of fees.

The Creditors filed a Motion for Default Judgment[1] seeking a default

---

[1] In their Motion for a Default Judgment, the Creditors stated:

    As the Court is aware, this litigation stems from the failed reorganization of MainePCS LLC ("MainePCS"), which filed a Chapter 11 case with the Bankruptcy Court on December 10, 2009. On August 27, 2010, the Bankruptcy Court confirmed MainePCS's Chapter 11 Plan, but that Plan essentially collapsed two weeks later when MainePCS failed to make certain so-called Effective Date payments (totaling approximately $1,000,000) to creditors under the Plan. MainePCS did not make those payments because Cunningham's former business, Maxton Technology, Inc. ("Maxton"), through Cunningham, failed to meet its funding

<u>judgment against the Debt</u>or for repeated failures to comply with a court-imposed

obligations under the Plan.

As a consequence of that failure and other allegedly tortious post-confirmation conduct, on February 15, 2011, Plaintiffs commenced an Adversary Proceeding in the Bankruptcy Court against Maxton, Cunningham, and MainePCS. In its initial complaint, Plaintiffs alleged essentially state-law breach of contract and fiduciary duty claims against those three Defendants.

On May 10, 2011, Plaintiffs filed the now-operative Complaint in this action. In that Complaint, Plaintiffs asserted 21 direct and 14 derivative claims against all Defendants on behalf of themselves individually and for the benefit of MainePCS's estate.

\*\*\*

On November 3, 2011, this Court issued its Order withdrawing the reference of the Adversary Proceeding. A few weeks later, Maxton [Technology, Inc.] commenced its own Chapter 7 case in the United States Bankruptcy Court for the District of Massachusetts.

\*\*\*

Magistrate Judge Kravchuk held a telephonic conference on August 2, 2012 (the "August 2 Telephonic Conference"). To the surprise of Plaintiffs' counsel, as he heard nothing from Cunningham literally until minutes before the scheduled conference, Cunningham personally participated in the August 2 Telephonic Conference.

During that conference, Cunningham "indicated that he was unaware that [Plaintiffs'] discovery initiatives [had] not been responded to." See August 3 Order, p 1. Consequently, the Court granted Cunningham until August 10, 2012 to "fully respond" to Plaintiffs' Discovery Requests. Id. at 2. During the August 2 Telephonic Conference, Plaintiffs' counsel requested that Cunningham serve his Initial Disclosures by that date as well.

Pursuant to the August 3 Order, the parties (jointly or independently) were also required to file a status report by August 15, 2012 to inform the Court of the status of Cunningham's compliance with his obligations under the August 3 Order. The August 3 Order also provides that "[i]f the status report does not report that progress has been made, plaintiffs are granted leave *to file a motion for default for failure to respond to discovery initiatives*." <u>Id.</u> (emphasis added).

scheduling order, stating:

> Here, Cunningham has repeatedly disregarded his litigation obligations and failed to timely and meaningfully participate in the adversarial process. Despite numerous requests, opportunities, and directives: (i) he has failed and refused to serve his Initial Disclosures in violations of the Amended Scheduling Order and the Court's directive at the August 2 Telephonic Conference; (ii) he has failed and refused to respond to Plaintiffs' settlement demand in violation of the Amended Scheduling Order; and (iii) he has failed and refused to respond in any timely, appropriate, or meaningful way to the Discovery Requests, all in contravention of the August 3 Order and the applicable Rules. Moreover, he has done so persistently over the course of the last 6 months, and even though he has been given many opportunities to come into compliance with his obligations and duties as a party in this case.

The Creditors initially sought a default judgment against the Debtor in the amount of $628,881.05, representing the amount of legal fees and costs that the Creditors incurred from September 11, 2010 (the date of the failure of MainePCS's Chapter 11 Plan) through June 8, 2012 (the date of the Creditors' settlement demand letter to the Debtor), all "as a result of his tortious, fraudulent, and other wrongful conduct as alleged in the Complaint." Id.

The District Court conducted a hearing on August 23, 2012 at which it stated: "[t]his matter was scheduled for a Rule 56(h) Conference and Defendant Kevin Cunningham failed to appear. The Court will schedule a hearing on sanctions after the response time has elapsed on the pending motion for default and default judgment." On September 21, 2012, the District Court entered a clerk's default against the Debtor, see Fed. R. Civ. P. 55(a).

On October 17, 2012, the Creditors submitted to the District Court a Memorandum in support of the entry of a default judgment for sanctions against the Debtor in the amount

of their attorneys' fees and costs seeking the total amount of $719,039.49, stating:

> Here, Plaintiffs, as members of MainePCS, assert that their out-of-pocket legal fees and costs are their own individualized damages incidental to and caused by the post-confirmation breaches and other tortious conduct of Cunningham as alleged in further detail in the Complaint. As in *Cantor*, Plaintiffs have expended significant resources to address and counteract Cunningham's egregious conduct with regard to MainePCS and the only expenditures readily capable of quantification are their attorney fees and costs. Awarding Plaintiffs their attorney fees and costs would serve the underlying principles of Delaware law, which unequivocally seek to discourage acts of disloyalty of fiduciaries. Moreover, failing to award Plaintiffs these fees and costs would amount to penalizing Plaintiffs for taking proper action to redress the harm inflicted by Cunningham's actions.

On October 19, 2012, the District Court conducted a hearing on the assessment of damages and ordered the Creditors to file a Supplemental Memorandum. In their Supplemental Memorandum, the Creditors addressed the following issues:

> (i) under a conflict of laws analysis, does Maine or Delaware substantive law apply to Plaintiffs' claims; (ii) notwithstanding which substantive law applies, are Maine and Delaware substantive law in alignment with respect to the duties of loyalty and care of managers and members of limited liability companies; (iii) whether the "bad faith" exception to the American Rule concerning fee shifting applies under both Maine law and federal jurisprudence; and (iv) the precise extent of Plaintiffs' claims for damages against Cunningham, in the form of their attorney fees, which, upon reconsideration following the October 19 hearing, Plaintiffs assert total $164,411.50.

On December 5, 2012, the Debtor filed an Opposition to the Motion for Default Judgment and Request to Vacate Entry of Judgment. On December 26, 2012, a Suggestion of Bankruptcy was filed in the United States District Court for the District of Maine. On

February 13, 2013, the District Court entered an "Order on Status" in which it stated that it did not enter a default judgment against the Debtor, adding"[t]he current status of the case is that a default has been entered against Mr. Cunningham but no default judgment has issued."

Section 109(e), as in effect on the petition date, provided:

(e) Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $360,475 and noncontingent, liquidated, secured debts of less than $1,081,400, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $360,475 and noncontingent, liquidated, secured debts of less than $1,081,400 may be a debtor under chapter 13 of this title.

11 U.S.C. § 109(e).[2]

Based upon the foregoing record, the Court finds that the debts owed to the Creditors were unliquidated at the commencement of the Debtor's case.

### III. LEGAL PRINCIPLES AND ANALYSIS

In determining a debtor's eligibility for a Chapter 13 case, the court does not count a debt that is unliquidated as of the petition date in calculating the debt limitations under Code § 109(e). *See* In re Slack, 187 F. 3d 1070 (9th Cir. 1999); Matter of Knight, 55 F.3d 231 (7th Cir. 1995). A debt arising out of a debtor's alleged breach of fiduciary duty that is the

---

[2] On April 1, 2013, the dollar amounts of the debt limitations under § 109(e) were adjusted to reflect the change in the Consumer Price Index. The amounts were adjusted to $383,175 with respect to unsecured debts and $1,149,525 with respect to secured debts. *See* 11 U.S.C. § 104(a). The adjusted debt limitations do not apply in this case which was commenced prior to April 1, 2013. *See* 11 U.S.C. § 104(c).

subject of litigation is considered liquidated only where the amount of the debt is readily ascertainable from testimony in the litigation. See In re Adams, 373 B.R. 116, 122 (B.A.P. 10th Cir. 2007). However, if the amount of the claim is subject to a future exercise of discretion by a trier of fact, the debt is considered unliquidated. Id.

In Elliott v. Papatones (In re Papatones), 143 F.3d 623 (1st Cir. 1998), the United States Court of Appeals for the First Circuit considered whether a debtor was eligible for Chapter 13 relief where a judgment against him had not been entered on the docket prior to the filing of his bankruptcy petition and thus, in the debtor's view, was not liquidated. The First Circuit rejected the debtor's argument that the debt was not liquidated because the presiding justice who had entered the judgment had

> repeatedly and categorically disavowed any ambivalence in announcing the $276,606.87 award and directing entry of judgment before concluding the evidentiary hearing: (i) initially, by adverting to "the money judgment that will be entered today . . ."; (ii) then, after relating detailed findings of fact, by announcing: "I'm going to award the following judgment . . . actual damages in the amount of one hundred and seventy-six thousand six hundred and six dollars and eighty-seven cents[.]"; and (iii) following further findings, by stating: ". . . for punitive or exemplary damages, I'm going to award a hundred thousand dollars." Finally, the presiding justice added: "And with no hesitation, and no doubt on my part, I'm going to impose that judgment."

143 F.3d at 624 n.3.

The circumstances present in the Maine District Court case are readily distinguishable from those present in Papatones. In the first place, the Creditors initially sought a judgment against the Debtor in excess of $700,000. The District Court did not enter the judgment initially requested by the Creditors, ordering the filing of a

8

Supplemental Memorandum to address a number of issues, including the amount of attorneys' fees to which the Creditors were entitled. In response, the Creditors reduced the amount of their requested judgment by almost 80%. In addition, the Debtor had filed a Motion to Vacate the Default and had filed an Opposition to the amount of the judgment. Finally, the District Court in its Order on Status expressly indicated that it had not entered a judgment, without intimating in any way how it perceived the positions of the parties.

In De Jounghe v. Mender (In re De Jounge), 334 B.R. 760 (B.A.P. 1st Cir. 2005), the court stated:

> Generally, eligibility for Chapter 13 is based upon debts as of the petition date and not upon post-petition events such as allowed claims, filed claims, or treatment of claims in a confirmed Chapter 13 plan. Therefore, Chapter 13 eligibility is usually determined by the debtor's schedules. As long as a debtor's schedules are completed after the exercise of due diligence and are filed in good faith, the schedules will determine a debtor's eligibility for Chapter 13.

334 B.R. at 768 (citations omitted).

In the present case, the Creditors did not establish that the Debtor's noncontingent, liquidated unsecured debts exceeded $360,475. The Court rejects the Creditors' argument that their "damages case was fully submitted to the District Court prior to the commencement of this case, and the District Court was poised and ready to issue a judgment against Debtor in the Civil Action following the damages hearing" and that "this is evidence of the liquidated nature of the Debtors' [sic] debts to creditors." The liability of the Debtor to the Creditors is not readily ascertainable from either the schedules

9

or a review of the record in the District Court action. Moreover, the Creditors' damages were subject to further action by the District Judge.

## IV. CONCLUSION

The liability of the Debtor to the Creditors was not liquidated as of the petition date and accordingly, the Court shall enter an order denying the Creditors' Motion to Dismiss.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: April 12, 2013